**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Audrea Mitchell, | * | |
| On behalf of herself and other members of the general public similarly situated, | * | Case No. 2:17-cv-717 |
| | * | Judge Michael H. Watson |
| Plaintiff, | * | Magistrate Judge Chelsey M. Vascura |
| v. | * | |
| Independent Home Care, Inc. | * | |
| Defendant. | * | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT AGREEMENT AND CERTIFICATION
OF SETTLEMENT CLASS**

Representative Plaintiff Audrea Mitchell hereby moves the Court for entry of an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) preliminarily certifying Representative Plaintiff's claims under the Ohio Minimum Fair Wage Standards Act ("MFWSA"), O.R.C. 4111.01, *et seq*., as a settlement class under Fed. R. Civ. P. 23; (3) appointing Representative Plaintiff's counsel as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) appointing CAC Services Group, LLC as the claims administrator; (5) approving the form, content, and manner of notice to the proposed settlement classes; and (6) scheduling a final approval hearing. Defendant Independent Home Care, Inc. ("IHC") does not oppose Plaintiffs' request.

As explained in the accompanying memorandum of law, the parties have reached a settlement in which IHC will make payments to two classes of employees. The first class consists

of 18 "Collective Members" who previously filed valid consents to join this action pursuant to 29 U.S.C. § 216(b), including the Representative Plaintiff. The second class consists of 46 individuals who worked at IHC in Ohio and provided companionship services, domestic services, home care, and/or in-home services, including home managers, support associates, caregivers, home health aides, and aides between January 1, 2015 and August 31, 2017, who did not file consents to join this action ("Class Members").

The 17 Collective Members and Representative Plaintiff have already joined this lawsuit and given their consent to be bound by the Representative Plaintiff in this action. As detailed in their memorandum of law, the parties submit that their proposed settlement of the Collective Members' claims is a reasonable resolution of the claims in this case and should be approved pursuant to 29 U.S.C. § 216(b).

Plaintiff also requests that the Court preliminarily certify a Fed. R. Civ. P. 23 class consisting of all Class Members solely for purposes of settlement. To that end, the parties agree that the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a) are satisfied and that the class claims meet the requirements of Fed. R. Civ. P. 23(b)(3). The parties further agree that Representative Plaintiff's counsel should be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g) and that CAC Services Group, LLC should be appointed as the claims administrator for purposes of administering the settlement. Finally, the parties agree that the proposed form, content, and manner of notice to the settlement classes is reasonably calculated to give both Collective and Class Members adequate notice of the settlement and an opportunity to object to it or opt out of it.

WHEREFORE, for the reasons set forth above and in the memorandum of law in support of this motion, Plaintiff requests that the Court enter an order:

1.  Preliminarily approving the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

2.  Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class consisting of all individuals who worked at IHC and provided companionship services, domestic services, home care, and/or in-home services, including home managers, support associates, caregivers, home health aides, and aides between January 1, 2015 and August 31, 2017, who did not file consents to join this action;

3.  Appointing Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g);

4.  Appointing CAC Services Group, LLC as the claims administrator for purposes of administering the settlement;

5.  Approving the form, content, and manner of the notices to the proposed settlement classes; and

6.  Setting a final approval hearing on a schedule consistent with the parties' settlement agreement and the Court's calendar.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207

Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email:  dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and those similarly situated*

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Audrea Mitchell, | * | |
| On behalf of herself and other members of the general public similarly situated, | * | Case No. 2:17-cv-717 |
| | * | Judge Michael H. Watson |
| Plaintiff, | * | Magistrate Judge Chelsey M. Vascura |
| v. | * | |
| Independent Home Care, Inc. | * | |
| Defendant. | * | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## I.   INTRODUCTION

On August 15, 2017, Representative Plaintiff, on behalf of herself and those similarly situated, initiated this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code §§ 4111.03 and 4111.078 ("OMFWSA"), and the Ohio Prompt Pay Act, Ohio Revised Code §§ 4113.15 ("OPPA") on behalf of herself and all Collective Members against Defendant Independent Home Care, Inc. ("IHC" or "Defendant"). (*See* ECF No. 1) In this lawsuit, Representative Plaintiff asserts that Defendant failed to pay proper overtime wages to Collective and Class Members because of the elimination of the companionship services exemption as of January 1, 2015. (*Id.*); *See* FLSA of 1938, § 13(a)(15), 29 U.S.C. § 213(a)(15), (21); 29 C.F.R. § 552.109(a), (c), 552.6. *See also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 749196, at *1 (S.D. Ohio Feb. 27, 2017). Representative Plaintiff was an hourly non-exempt employee that worked as a home health aide

providing companionship services, domestic services, home care, and other in-home services, but Defendant failed to pay Representative Plaintiff and the Collective and Class Members one and one-half their correct regular rate of pay for hours worked over 40 in any workweek since January 1, 2015. (*See* ECF No. 1)

The parties subsequently stipulated to conditional certification as to Representative Plaintiff's claims under the FLSA, after which 17 individuals opted into the action (the "Collective Members"). On January 11, 2018, Representative Plaintiff moved the Court for leave to file this Action in the Court as a collective and class action under the FLSA, OMFWSA, and Federal Rule of Civil Procedure 23 on behalf of herself and all Collective and Class Members against Defendant Independent Home Care, Inc. (*See* ECF No. 19) On January 12, 2018, this Court granted Plaintiff leave and Plaintiff's First Amended Collective and Class Action Complaint was filed by the Clerk. (*See* ECF Nos. 20 and 21) Following the order granting conditional certification, 17 Collective and Class Members opted into the Action by filing consent forms pursuant to 29 U.S.C. § 216(b).

Thereafter, between March 12, 2018 and September 10, 2018, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. On September 10, 2018, the Parties reached a settlement of this litigation upon stated terms and conditions, which are set forth in this Settlement Agreement, covering all claims asserted in the lawsuit.

The basic terms of the agreement provide for a payment of $59,155.72 to the 17 individuals who opted into the lawsuit, as well as the one Representative Plaintiff ("Collective Members"); a payment of $132,275.97 to 46 members of the putative Fed. R. Civ. P. 23 class who did not opt into the lawsuit ("Class Members"); and a class representative enhancement payment of $5,000 to the Representative Plaintiff, Audrea Mitchell. Because all of the claims in this case pertain to the

2

payment and calculation of overtime, these amounts will be allocated to Collective Members and Class Members on a pro rata basis based on the number of unpaid overtime hours in workweeks between January 1, 2015 and August 31, 2017. All Collective and Class Members who do not opt out of the settlement will receive a payment without the need to make any sort of a claim. In exchange for these payments, Collective and Class Members will provide IHC with a release of all wage and hour claims for the applicable time period. In addition, Class Counsel will apply for an award of attorneys' fees and costs of $100,472.41, which IHC will not oppose, and IHC will pay all claims administration costs. Moreover, IHC has modified the manner in which it compensates Plaintiffs as a result of the alleged claims to come into compliance with the FLSA. Defendant will continue its updated pay practice for the applicable employees.

Plaintiff respectfully submits that the proposed settlement is a fair, reasonable, and adequate resolution of this litigation. As such, Plaintiff asks that this Court enter an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to 29 U.S.C. § 216(b); (2) preliminarily certifying Representative Plaintiff's claims under the MFWSA as a settlement class under Fed. R. Civ. P. 23; (3) appointing Representative Plaintiff's counsel as "Class Counsel" pursuant to Fed. R. Civ. P. 23(g); (4) appointing CAC Services Group, LLC as the claims administrator; (5) approving the form, content, and manner of notice to the proposed settlement classes; and (6) scheduling a final approval hearing. Defendant IHC does not oppose Plaintiff's request.

## II.  FACTUAL BACKGROUND

### A.  Procedural History

Representative Plaintiff Mitchell worked for IHC from approximately February, 2013 and is still presently employed with IHC. (ECF No. 21, PAGEID # 111) During this time period, she

3

worked and still works as a home health aide providing companionship services, domestic services, home care, and other in-home services. (*Id*.) She regularly worked more than 40 hours per week, but was not paid one-and-one-half times her correct regular rate of pay for all hours worked over 40 in any workweek. (*Id*.)

On August 15, 2017, Representative Plaintiff filed this Action in the Court as a collective action under the FLSA, the OMFWSA, and the OPPA on behalf of herself and all Collective Members against Defendant IHC. (*See* ECF No. 1) In this lawsuit, Representative Plaintiff asserts that Defendant failed to pay proper overtime wages to Collective and Class Members because of the elimination of the companionship services exemption as of January 1, 2015, which now classifies these types of workers as non-exempt. *See* FLSA of 1938, § 13(a)(15), 29 U.S.C. § 213(a)(15), (21); 29 C.F.R. § 552.109(a), (c), 552.6. *See also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 749196, at *1 (S.D. Ohio Feb. 27, 2017). More specifically, it is alleged that between January 1, 2015 and August 31, 2017 (1) IHC failed to pay proper overtime wages to hourly, non-exempt employees who provided companionship services, domestic services, home care, and other in-home services, including home managers, support associates, caregivers, home health aides, and aides, which during certain workweeks, resulted in unpaid overtime compensation; and (2) IHC failed to properly calculate the regular rate of pay in determining overtime rates for the same employees who worked with different rates of pay due to additional forms of remuneration such as performance bonuses. (*Id*.)

On October 25, 2017, the Parties agreed to conditional certify the case as a collective action under 29 U.S.C. § 216(b) of the FLSA and send an agreed-upon notice of the lawsuit with a notice period of 45 days to the similarly situated class members as defined as follows:

> All current and former hourly employees of Defendant, who provided companionship services, domestic services, home care,

and/or in-home services, and worked over 40 hours in any workweek beginning January 1, 2015 through the present. (*See* ECF No. 9)

On December 11, 2017, pursuant to the Parties' stipulation, the Court conditionally certified this Action as a collective action pursuant to 29 U.S.C. § 216(b). (*See* ECF No. 10) Representative Plaintiff did not and has not filed a motion for certification of the Rule 23 class. Thereafter, Plaintiffs sent notice to 65 individuals falling within the Class Definition, providing them with the right to opt into the lawsuit. Following the provision of notice, in addition to the Representative Plaintiff, an additional 17 individuals, referred to as the Collective Members, opted into the lawsuit.

On January 11, 2018, Representative Plaintiff moved the Court for leave to file this Action in the Court as a collective and class action under the FLSA, OMFWSA, and Federal Rule of Civil Procedure 23 on behalf of herself and all Collective and Class Members against Defendant IHC (*See* ECF No. 19) On January 12, 2018, this Court granted Plaintiff leave and Plaintiff's First Amended Collective and Class Action Complaint was filed by the Clerk. (*See* ECF Nos. 20 and 21) More specifically, Mitchell asserted that (1) IHC failed to pay overtime wages at one-and-one-half times their regular rate of pay to current and former hourly, non-exempt employees who primarily provide companionship services since January 1, 2015 through the present ("Unpaid Overtime Claims"); and (2) during a certain time period, IHC miscalculated the regular rate of pay for overtime purposes for employees who received additional forms of remuneration such as performance bonuses (the "Regular Rate Claims"). (*Id*.) Mitchell brought her FLSA claims as an opt-in collective action under 29 U.S.C. § 216(b) and her state law OMFWSA claims as an opt-out class action under Fed. R. Civ. P. 23. (*Id*.)

5

Thereafter, between March 12, 2018 and September 10, 2018, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims, including payroll data for the putative class. (Exhibit H, Coffman Dec. ¶ 14; Exhibit I, Bryant Dec. ¶¶ 8-14) In addition, Class Counsel thoroughly investigated and researched the claims in controversy, IHC's defenses, and the law. (Ex. H, Coffman Dec. ¶ 11; Ex. I, Bryant Dec. ¶ 9) The investigation included the aforementioned exchange of information, interviewing putative class members, reviewing and analyzing payroll and time records, computing potential liability, communicating with IHC's counsel, assessing IHC's anticipated defenses, and evaluating the possibility of possible decertification of the collective and denial of class certification. (Ex. H, Coffman Dec. ¶ 14-17; Ex. I, Bryant Dec. ¶¶ 12-17)

On September 10, 2018, the Parties reached a settlement of this Litigation upon stated terms and conditions, which are set forth in this Settlement Agreement that resolves all claims asserted in the lawsuit. (Ex. H, Coffman Dec. ¶ 17; Ex. I, Bryant Dec. ¶ 15).  Based on their investigation, Class Counsel is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class and collective in light of the risk of significant delay, costs and uncertainty associated with litigation, IHC's defenses, and hardship of IHC. (Ex. H, Coffman Dec. ¶ 18-19; Ex. I, Bryant Dec. ¶¶ 16-17).

### B.    Terms of the Settlement Agreement

The settlement agreement provides for two subclasses.  The first settlement class, the "FLSA Subclass," includes the Representative Plaintiff and all 17 Collective Members who filed consents to join the litigation pursuant to 29 U.S.C. § 216(b). (Ex. H, Coffman Dec. ¶ 20; Ex. I, Bryant Dec. ¶ 18).  The second settlement class, the "Rule 23 Subclass," includes all individuals, referred to herein as Class Members, who worked at IHC and performed companionship services,

6

domestic services, home care, and/or other in-home services, including home managers, support associates, caregivers, home health aides, and aides between January 1, 2015 and August 31, 2017, who did not file consents to join the lawsuit. (Ex. H, Coffman Dec. ¶ 21; Ex. I, Bryant Dec. ¶ 19). The Rule 23 Subclass consists of 46 current and former employees. (*Id.*).

The settlement agreement provides that IHC will pay a total of $191,431.69 to the two settlement subclasses – $59,155.72 of which will be allocated to the FLSA Subclass and $132,275.97 to the more numerous Rule 23 Subclass. (Ex. H, Coffman Dec. ¶ 20-21; Ex. I, Bryant Dec. ¶¶ 18-20).

The FLSA and Rule 23 Subclasses will be entitled to claim a proportionate share of their respective settlement funds based upon the number of Unpaid Overtime during the relevant time period, January 1, 2015 to August 31, 2017, described in the Settlement Agreement ("Unpaid Overtime"). (Ex. H, Coffman Dec. ¶ 20-22; Ex. I, Bryant Dec. ¶¶ 18-20). This is so because the claims in this case relate solely to the underpayment of overtime. Accordingly, the proportional share for each subclass member was computed in multiple steps. First, the total damages for the Unpaid Overtime by the individuals comprising the two Subclasses was calculated by both Defendant and Plaintiff. Then, the Settlement payment to each individual was calculated on the basis of each individual's proportion of the total damages. (*Id.*). Overall, the two Subclasses will collectively be receiving 101% of their total damages. (*Id.*).[1] Members of the FLSA and Rule 23 Subclasses will not be required to submit any sort of a claim to receive a settlement payment and, except with respect to individuals who opt out of the settlement, there will be no reversion of settlement monies to IHC.

---

[1] Defendant reserves the right to dispute any previous calculations should the Court not give its preliminary and final approval of the settlement.

In addition, the settlement agreement provides for a modest collective and class representative enhancement payment of $5,000 to the Representative Plaintiff, Audrea Mitchell, who appeared assisted Class Counsel with the litigation ("Class Representative Enhancement Payment"). (Ex. H, Coffman Dec. ¶ 23; Ex. I, Bryant Dec. ¶ 21).

As for attorneys' fees and costs, under the terms of the settlement agreement, Class Counsel will make a fee application to the Court in the amount of $100,472.41 ("Class Counsel Award"), which IHC will not oppose. (Ex. H, Coffman Dec. ¶ 24; Ex. I, Bryant Dec. ¶ 22). The Class Counsel Award will be approved by the Court in its final order approving the settlement. (*Id*.). That award will be paid by IHC; it will not be taken from the settlement funds described above. (*Id*.).

Based on the forgoing, IHC's total settlement payment will not exceed $300,000, including the costs of the claims administrator, which are currently estimated to be approximately $3,095.90. (Exhibit A, Settlement Agreement, ¶ 28(f))

As part of the settlement, IHC has also agreed to therapeutic relief. (*See* Ex. A, ¶ 28(g), "Change in Pay Practice"). The Unpaid Overtime Claims are based on the premise that Defendant has corrected its pay practices so as to properly compensate employees for their overtime hours worked at one and one-half times their regular rate of pay beginning in August 2017. (*Id*.)

### C.    Notice Procedure

The settlement agreement provides for notices to be issued to both the FLSA and Rule 23 Subclasses. (Ex. A, Settlement Agreement, ¶¶ 27 and 29-31) The "Collective Member Notice" to be issued to the FLSA Subclass is attached as Exhibit C and the "Class Member Notice" to be issued to the Rule 23 Subclass is attached as Exhibit D. (*Id*. at ¶¶ 10-11). The notices shall inform the Collective and Class Members of the pendency of this lawsuit; the terms of the proposed

settlement; the amount of their individual settlement payments; their right to opt out of the settlement or object to it; and the date of the Final Approval Hearing. (*Id*. at ¶¶ 27 and 29-31). Within 14 days after entry of an order approving the notices, the Claims Administrator shall mail the Collective Member Notice and Class Member Notice, as approved by the Court, by First Class U.S. Mail to all Collective and Class Members. (*Id*. at ¶ 27(d) and ¶¶ 29-31). Following the mailing of the notices, Collective and Class Members shall have 30 days from the date of mailing to submit any objections to the settlement or to opt out of the settlement. (*Id*.).

After the close of the opt out and objections periods, the parties request that the Court schedule a Final Approval Hearing on the settlement. If the Court grants final approval, the claims of all Collective and Class Members who did not opt out of the lawsuit will be dismissed with prejudice, they will release the claims described below, and they will be mailed their proportionate share of their respective settlement fund by the claims administrator. (*Id*. at ¶¶ 32-35).

Collective and Class Members who do not opt out of the settlement will release IHC and related entities described in the Settlement Agreement from:

> any and all charges, claims, causes of action, actions, lawsuits, demands, demands for arbitration, complaints, liabilities, obligations, promises, agreements, rights, and controversies of any kind, whether known or unknown, for any remedies whatsoever, including monetary relief, injunctive relief, declaratory relief, equitable relief, damages, special damages, liquidated damages, wages, compensation, benefits, restitution, disgorgement, attorneys' fees, costs, expenses, losses, debts, interest, penalties, civil penalties, and fines, whether direct or indirect, whether under federal law or the law of any state, whether suspected or unsuspected, which any Collective or Class Member has had, now has, or may have in the future against the Released Parties for any act occurring on or before the date on which preliminary approval is granted relating to the payment of wages, hours worked, or based on the facts that were or reasonably could have been alleged in the Litigation, including, but not limited to, claims relating to wages, compensation, meal and rest periods (including missed, interrupted, untimely, unpaid, not provided, or noncompliant meal and/or rest periods), work performed off-the-clock, regular rate calculations, bag checks, bank deposits, hours worked, payments for hours worked, payments for overnight shifts, and all claims under the Fair Labor Standards Act and Ohio Minimum Fair Wage Standards Act . . .

(Ex. A, Settlement Agreement, ¶¶ 35-38). Further, any Class Member who does not opt out of the settlement will be deemed to have affirmatively opted into the lawsuit under the FLSA, 29 U.S.C. § 216(b). (*Id.*). Collective and Class Members who do not opt out of the settlement will be issued an Individual Settlement Payment by the Claims Administrator in the form of a "Settlement Check." (*Id.*).

### III.    LAW AND ARGUMENT

Insofar as the settlement agreement proposes to settle claims brought under the MFWSA and FLSA, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b). As explained below, approval is warranted under both provisions.

#### A.    **Preliminary Approval of the Settlement Under Rule 23(a) and (b) is Appropriate**

##### 1.    **Certification of the Settlement Class Is Appropriate**

A proposed settlement class must satisfy the requirements of Fed. R. Civ. P. 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), *citing, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). The proposed settlement class satisfies those requirements.

The Rule 23 Subclass meets the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Fed. R. Civ. P. 23(a). *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Rule 23 Subclass, consisting of approximately 46 members, is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Representative Plaintiff asserts that there are questions of law or fact that are common to the class, including (a) whether IHC violated the MFWSA and FLSA by failing to pay employees one and one-half times their regular rate of pay for hours worked in excess of forty hours per week; (b) whether IHC kept accurate records of the

amount of time the Rule 23 Subclass was working each day; (c) whether IHC's alleged violations of the MFWSA and FLSA were knowing and willful; (d) what amount of allegedly unpaid overtime compensation is due to members of the Rule 23 Subclass; and (e) what amount of prejudgment interest is due to the Rule 23 Subclass members on the overtime or other compensation which was withheld and not paid to them. (Second Amended Complaint, ECF No. 21, at ¶ 49). The claims of the Representative Plaintiff are typical of the Rule 23 Subclass, insofar as they all stem from IHC's failure to fully compensate the workers in the positions within the Class Definition for all hours worked over forty (40) at the proper rate of pay. The Representative Plaintiff is an adequate representative of the Rule 23 Subclass, in that she has common interests with other putative class members, asserts that she has suffered the same alleged overtime violations, and has vigorously prosecuted the interests of the class through Class Counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Rule 23 Subclass further satisfies Rule 23(b)(3)'s requirements of predominance and superiority for settlement purposes. *Senter*, 532 F.2d at 522; *UAW,* 497 F.3d at 626. The unpaid overtime issues presented under the MFWSA and FLSA, which are based on alleged uniform policies and practices that apply to all Collective and Class Members, predominate over questions affecting only individual members. More specifically, Representative Plaintiff's claims are based on IHC not paying certain hourly employees their overtime premium at the proper rate of pay. Representative Plaintiff alleges that these practices apply to all Collective and Class Members, making questions of law and fact that are common to the Rule 23 Subclass predominate over individualized issues.

In addition, class-wide resolution of this controversy is superior to the alternative of litigating 64 [2] individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982)(class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F.Supp. 869, 883 (S.D. Ohio 1994)(of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2. The Class Notices Satisfy Rule 23 and Due Process

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed.Appx. 364 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW,* 497 F.3d at 626, *citing*, *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008), *citing*, *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-944 (10th Cir.2005); *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel*, 534 F.3d at 514 (6th Cir. 2008), *citing*, *DeJulius,* 429 F.3d at 944; *Mullane,* 339 U.S. at 313-14; *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-1111 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be

---

[2] Named Plaintiff Mitchell, 17 Collective Members, and 46 Class Members.

raised to the settlement." *Fidel*, 534 F.3d at 514, *quoting*, *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

The "individual notice" requirement of Rule 23(e) and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes,* 513 F.2d 114, 120 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). Such notice is the "best notice practicable" in a class action. *Grunin*, 513 F.2d at 121; *Eisen*, 417 U.S. at 175.

In the present case, the proposed Collective and Class Member Notices satisfy these requirements. Under the terms of the Settlement Agreement, the notices will be sent to Collective and Class members by first-class mail using the addresses shown in IHC's records within 14 days of a preliminary approval order. The notices inform Collective and Class Members of the claims asserted in the lawsuit, explain the structure of the settlement, set forth each individual's anticipated individual settlement payment, and provide them with the ability to seek more information and copies of the settlement documents from the Claims Administrator or Class Counsel. The notices also inform Collective and Class Members of their rights to opt out of the settlement or object to it and provide them with an opportunity to do so within 30 days of the mailing of the notices. Any notices returned to the claims administrator as undeliverable will be traced up to two times to obtain a new address to which they shall be re-mailed. This process is reasonably calculated to apprise Collective and Class Members of the pendency of the settlement and afford them an opportunity to present their objections or opt out of the settlement.

## B.    <u>Preliminary Approval of the Settlement Under Rule 23(e) is Appropriate</u>

Under Federal Rule of Civil Procedure 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497

13

F.3d 615, 626, *citing*, *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-923 (6th Cir.1983). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 Newberg On Class Actions §11.41 (4th ed. 2007). Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F.Supp.2d 1142, 1145-1146 (M.D. Fla. 2005), *citing*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW,* 497 F.3d at 626. And, unlike Rule 23 class certification for purposes of litigation, certification of a Rule 23 class solely for the purposes of settlement does not require the court to engage in an analysis of manageability. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, syl. 2(b), 620 (1997)("whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial"). As explained below, the seven-factor standard supports approval of the settlement in this case.

### a. *No Indicia of Fraud or Collusion Exists.*

14

The parties reached a settlement in this case following almost a year of litigation, extensive review and computation of damages, and significant settlement negotiations. As a result of the Settlement, Defendant had to obtain financing in order to satisfy the Settlement. As such, there is no indicia of fraud or collusion.

### b. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the parties continue to disagree over the merits of Representative Plaintiffs' claims. IHC maintains that it did not willfully violate the FLSA or MWFSA due to alleged advice by a third party, which ensures that they are properly paid for all hours worked. IHC further contends that it properly calculated the regular rate and overtime premiums for the two Subclasses.

While IHC stipulated to conditional certification, if the litigation proceeds, it has the option to file a decertification motion as to the FLSA claims. IHC also has the option to oppose certification under Fed. R. Civ. P. 23 as to Representative Plaintiff's state law claims.

In addition, the parties disagree as to whether the two-year limitations period for non-willful violations or a three-year limitations period for willful violations applies. Defendant claims that even if the Representative Plaintiff succeeds on the merits, she cannot prove a willful violation of the law, and thus, only a two-year limitations period would apply. Further, Defendant asserts, because it acted in good faith, no liquidated damages should be awarded even if the Representative Plaintiff is able to prevail on her claims. Nevertheless, the total damages calculations discussed above are based on a three-year lookback and the award of full liquidated damages.

Thus, if forced to litigate this case further, the parties would engage in complex, costly, risky, and protracted litigation. The settlement, on the other hand, provides substantial relief to the Representative Plaintiff and the Collective and Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class-wide resolution.

### c. *The Parties Sufficiently Investigated the Claims and Defenses Asserted.*

The parties engaged in substantial investigation prior to negotiating the settlement agreement. Prior to filing the lawsuit, Class Counsel performed a significant amount of research and conducted a factual investigation into the claims and state of the law. After Representative Plaintiffs filed the lawsuit, the parties exchanged relevant information, including detailed payroll information and other business records of IHC. In addition, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, and conducted additional legal research regarding the claims and defenses in the case. Thus, the legal issues were thoroughly researched by the parties and the value of the claims properly assessed.

### d. *The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval.*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. As discussed above, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that IHC acted in good faith and Representative Plaintiff fails to establish a willful violation of the law. Moreover, an appeal could be filed. On the other hand, Defendant faces the prospect of classwide liability to 64 current and former employees, as well as liquidated damages and attorneys' fees following lengthy and expensive litigation. These considerations all support approval of the settlement.

      **e.**      ***The Opinions of Class Counsel and Representative Plaintiffs Favor Approval.***

The parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this settlement. And, for the reasons set forth above, Class Counsel is of the opinion that the settlement is a fair, reasonable, and adequate resolution of this litigation. Likewise, Representative Plaintiff agrees that the settlement is fair and reasonable, and she assents to the terms of the settlement.

      **f.**      ***The Reaction of Absent Class Members Will Likely Favor Approval.***

Absent class members will not be informed of the settlement until notice is authorized by the Court. Based on the terms of the settlement and input of the Representative Plaintiff, however, it is anticipated that their reaction will be positive.

      **g.**      ***The Public Interest Favors Approval.***

Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. *Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), *quoting*, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1992). Settlement agreements assure that plaintiffs will receive compensation for the alleged violations at issue. As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." *Edwards*, 2016 U.S. Dist. LEXIS 64159 at *10.

The same is true here. The settlement promotes public interest by providing fair and efficient payments to Collective and Class Members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### 2. The Settlement Distributions are Fair, Reasonable, and Adequate

As part of the scrutiny it applies to a class and collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008), *citing*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999).  In the present case, the settlement establishes two pools of settlement funds – one for Collective Members who affirmative opted into the lawsuit following conditional certification and another for Class Members who did not do so.  Those settlement pools will be divided among Collective and Class Members who do not opt out of the settlement on a pro rata basis based upon the number of weeks they worked overtime.  This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by Collective and Class Members and will provide them with a proportionate share of the settlement funds.  A modest class representative enhancement payment will also be made to the Representative Plaintiff, but this payment will not come from the settlement pools. Likewise, Class Counsel will make a separate fee application to the Court, which will be paid by IHC and not be taken from the settlement funds allocated to the classes.

### a. *The Individual Payments are Reasonable and Adequate*.

The payments to Collective and Class Members are calculated proportionally based upon the number of Unpaid Overtime worked from January 1, 2015 until August 31, 2017.  This comports with the theory of Representative Plaintiff's claims, insofar as her claims are based on

her contention that IHC either did not pay the two Subclasses overtime premium[3] or did not properly calculate their overtime rate of pay.[4]  Hence, Collective and Class Members only suffered damages for not being paid overtime correctly or fully, rather than not receiving any compensation whatsoever.

The settlement amount provided to the Rule 23 Subclass is $132,275.97.  The Rule 23 Subclass consists of 46 individuals, many of whom worked significant overtime hours during the relevant period. (Coffman Dec. ¶ 21-22; Bryant Dec. ¶ 18-19).  The highest payment to any Class Member is $9,518.24. These figures represent a reasonable and adequate resolution of the Class Members' overtime claims.

### b.    *Representative Plaintiff's Service Award is Reasonable*.

Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case."  *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played

---

[3] The employees were only paid straight time for all hours worked for a period of time.
[4] After a change in its pay practice (from the employees' straight hourly rate for all hours worked), Defendant paid employees a base hourly rate and then provided a "bonus", but Defendant failed to factor the bonus in the regular rate calculations for overtime. Instead, Defendant paid 1.5 times the employees' base hourly rate.

may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374, *citing*, *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985), *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)(among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Representative Plaintiff is entitled to the service award of $5,000. She provided factual information to Class Counsel, faithfully communicated with Class Counsel, and subjected herself to the responsibilities of serving as a Representative Plaintiff in a lawsuit against her employer. (Coffman Dec. ¶ 23; Bryant Dec., ¶ 21).

Moreover, the proposed $5,000 service award sets forth in the agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, *20 (S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. 420 (M.D. Tenn. October 17, 2014)(approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969, *4 (E.D.N.Y. May 12, 2016)(awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc*., 2013 U.S. Dist. LEXIS 152087, *4 (W.D. Wis. Oct. 23, 2013)(approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings*, 2016 U.S. Dist. LEXIS 39115, *6 (S.D.N.Y. Mar. 24, 2016)(service awards representing 5% of the settlement fund are "well within the range of service awards recently approved" in FLSA cases). Hence, the $5,000 service award to the Representative Plaintiff in this case is appropriate.

### C.      Preliminary Approval of the Settlement under 29 U.S.C. § 216(b) is Appropriate

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)(explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").  Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1358, fn.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-1354.  Thus, if the proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Id.* at 1354.

In this case, as detailed above, the settlement was a result of arm's-length negotiations resulting in a reasonable, fair, and adequate resolution for the FLSA Subclass.  The settlement pool allocated to the 18-member FLSA Subclass is $59,155.72.  The highest payment to any Collective Member is $14,556.96. These figures represent a fair and equitable resolution of the Collective Members' overtime claims. Accordingly, Plaintiff requests that the Court approve the settlement.

## IV.      CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court enter an order:

1.      Preliminarily approving the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

2.      Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class consisting of all individuals who worked at IHC and provided companionship

21

services, domestic services, home care, and/or in-home services, including home managers, support associates, caregivers, home health aides, and aides between January 1, 2015 and August 31, 2017, who did not file consents to join this action;

3. Appointing Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g);

4. Appointing CAC Services Group, LLC as the claims administrator for purposes of administering the settlement;

5. Approving the form, content, and manner of the notices to the proposed settlement classes; and

6. Setting a final approval hearing on a schedule consistent with the parties' settlement agreement and the Court's calendar.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email:  dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and those similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing *Motion and Memorandum in Support of Plaintiffs'*

*Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement Agreement*

*and Certification of Settlement Class* has been filed via the electronic filing system on October 17,

2018.  Notice of filing will be performed by the Court's electronic filing system, and Parties may

access the document through the electronic filing system.

*/s/ Daniel I. Bryant*

Daniel I. Bryant (0090859)
