**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Audrea Mitchell, | * | |
| On behalf of herself and other members of the general public similarly situated, | * | Case No. 2:17-cv-717 |
| | * | Judge Michael H. Watson |
| Plaintiff, | * | Magistrate Judge Chelsey M. Vascura |
| v. | * | |
| Independent Home Care, Inc. | * | |
| Defendant. | * | |
| | * | |

## REPORT AND RECOMMENDATION

Plaintiff Audrea Mitchell ("Mitchell"), individually and on behalf of similarly situated individuals, moved the Court for final approval of the proposed class and collection action settlement described in the parties' Settlement Agreement (ECF No. 34-1) ("the Settlement") and to enter final judgment in this action. (ECF No. 39.) Notice was given to members of the Settlement Class, and a Fairness Hearing was held on February 13, 2019. Also before the Court is Plaintiff's Counsel's Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Costs. (ECF No. 35.) Having considered the Settlement Agreement and the arguments in support of final approval, it is **RECOMMENDED** that Plaintiff's Unopposed Motion for Final Approval of Rule 23 Class Settlement and for Approval of FLSA Settlement and Plaintiffs' Counsel's Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Costs be **GRANTED**. (ECF Nos. 29 and 35.)

## I. BACKGROUND

### A. Procedural History

Class Plaintiff Mitchell filed a collective action complaint ("Action") against Defendant Independent Home Care, Inc. ("Defendant"), ECF No. 1. On August 17, 2017, the parties stipulated to conditional certification, ECF No. 9, after which 17 individuals joined this Action by filing Consent Forms, ECF Nos. 13-18, 22-23, 25, and 26-28. Thereafter, Class Plaintiff Mitchell filed an amended collective and class action complaint to include Rule 23 allegations, ECF No. 21. Plaintiff, on behalf of herself and those similarly situated, alleged that she and other hourly, non-exempt individuals who worked at IHC and provided companionship services, domestic services, home care, and/or in-home services, including home managers, support associates, caregivers, home health aides, and aides between January 1, 2015 and August 31, 2017, are owed unpaid overtime compensation for two reasons: (1) IHC did not pay them one and one-half times their regular rate for hours worked over 40 in one or more workweeks ("overtime"); and (2) once IHC began paying overtime, it failed to pay overtime based on the correct regular rate of pay during workweeks when Class Plaintiff and the Rule 23 Class received additional forms of non-discretionary remuneration. ECF No. 21. Defendant IHC denied Class Plaintiff's claims and asserted affirmative defenses. *See* Answer to First Amended Complaint, ECF No. 24.

### B. Preliminary Approval

On October 17, 2018, Plaintiff filed her unopposed motion for preliminary approval of a class and collective action settlement agreement and certification of settlement class, ECF No. 34 and 34-1 through 34-9. On November 2, 2018, the Court found that the proposed settlement satisfied the standard for approval of a FLSA collective action under 29 U.S.C. § 216(b). Prelimn. Approval Order, ECF No. 36.

The Court also certified the class, concluding that the proposed Class Members satisfy "the four prerequisites of Rule 23(a)" – numerosity, commonality, typicality, and adequate representation – and "meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). The Court found that the settlement class ("Settlement Class" or "Class Members") consists of the following:

> "[a]ll individuals who worked at Independent Home Care, Inc., in Columbus, Ohio, and provided companionship services, domestic services, home care, and/or other in-home services, including home managers, support associate, caregivers, home health aides, and aides between January 1, 2015, and August 31, 2017, who did not previously file consents to join this action."

Prelim. Approval Order, ECF No. 35, PAGEID # 307-08.

**C. The Settlement Agreement**

The Settlement resolves two types of claims between the parties. First, the Settlement resolves FLSA claims of the Class Plaintiff and similarly situated employees who opted into the case pursuant to 29 U.S.C. § 216(b). Second, the Settlement resolves state-law wage-and-hour claims of the Class Plaintiff and all members of the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(e).

The Settlement total is $300,000, inclusive of attorney fees and costs. The Settlement makes individual payments available to the Class Plaintiff, Opt-Ins, and Settlement Class Members representing 101% of their total damages (exclusive of liquidated damages). The parties' proposed method of allocating the net settlement amount establishes two pools of settlement funds – one for Collective Members who affirmative opted into the lawsuit following conditional certification and another for Class Members who did not do so. Those settlement pools will be divided among Collective and Class Members who do not opt out of the settlement on a pro rata basis based upon

the number of hours of overtime worked during the relevant timeframe. This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by Collective and Class Members and will provide them with a share of the settlement funds proportionate to the harm they allegedly suffered.

In addition, the Settlement calls for a $5,000 class representative enhancement payment to the Class Plaintiff, but this payment will not come from the settlement pools. Likewise, IHC has agreed not to oppose Class Counsel's fee applications (ECF Nos. 35 and 35-1 through 35-3; and ECF Nos. 39 and 39-1 through 39-1) to the Court, which will be paid by IHC and not be taken from the settlement funds allocated to the classes.

**D. Notice**

Class Plaintiff retained CAC Services Group, LLC ("CAC"), to be the Settlement Administrator. CAC was responsible for providing Notice to Collective and Class Members. *See* Johnson Dec., ¶¶ 1-14, ECF No. 39-1. Notice was given to "[a]ll individuals who worked at Independent Home Care, Inc., in Columbus, Ohio, and provided companionship services, domestic services, home care, and/or other in-home services, including home managers, support associate, caregivers, home health aides, and aides between January 1, 2015, and August 31, 2017, who did not previously file consents to join this action." *Id*. at ¶ 4, PAGEID # 340-41. Plaintiff's counsel filed the declaration of CAC's Settlement Administrator, Nancy A. Johnson, President of CAC, verifying that the Notice was distributed via first-class mail to eighteen (18) Collective Action Members and forty-six (46) Class Action Members. *Id*. at ¶ 6, PAGEID # 341. No notice packets were returned to CAC with forwarding addresses and only one was returned without a forwarding address, which remains undeliverable. The Notice also provided the time and location of the Settlement Hearing and explained the procedures for objecting to the proposed settlement and

request for attorney's fees. *Id*. at ¶¶ 6-14, PAGEID # 341-42 and 345-352. The Notice specifically advised that the deadline for objecting was December 16, 2018. *Id*. at PAGEID # 347. As of January 21, 2019, the Settlement Administrator averred that CAC had not received any requests for exclusion from the Settlement Class or any objections from the Class Members. *Id*. at ¶¶ 9-10, PAGEID # 342.

## II. APPROVAL OF THE PROPOSED CLASS SETTLEMENT

In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As to the Opt-Ins, the Court must also find that the proposed Settlement satisfies the standard for approval of an FLSA collective action settlement under 29 U.S.C. § 216(b); *see Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018); *see also Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012) (requiring a finding that there is "a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the settlement "is fair, reasonable, and adequate.")

In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). Because the Court applies similar factors to evaluate the settlement of a FLSA action, the Court will address the factors below for all claims and Class

5

Plaintiff. *Wright*, 2018 WL 3966253, at *3; *see, e.g., Clevenger v. JMC Mech., Inc.*, No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (applying five of the factors outlined above when approving an FLSA action).

For the reasons that follow, the undersigned concludes that the Settlement is fair, adequate, and reasonable.

### A. The Risk of Fraud or Collusion

First, the undersigned finds that there is no evidence—or even a suggestion—that the settlement was the product of fraud or collusion, as testified to during the hearing. *See Wright*, 2018 WL 3966253, at *3 (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."). Rather, the settlement is the result of arm's-length, well-researched, and protracted negotiations. The undersigned concludes that this factor favors approval of the Settlement.

### B. Complexity, Expense, and Likely Duration of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Wright*, 2018 WL 3966253, at *3 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001) (internal citations omitted.)). Here, the difficulty Class Plaintiff, Collective, and Class Members would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement.

The Parties have been litigating in this Court since August 15, 2017. Class Plaintiff's counsel explained at the hearing that continuing litigation would have resulted in additional time

and effort spent continuing the litigation. Settling the case now will result in the saving of time and money to the Parties and serve judicial economy.

If this matter is not settled at this time, there would, inevitably, be additional discovery. There would also likely be summary judgment motions, pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort. Furthermore, the additional delay due to post-trial motions and the appellate process could prolong the litigation.

Accordingly, this factor weighs in favor of approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

### C. The Amount of Discovery Engaged in by the Parties

To confirm that Class Plaintiff, Collective Members, and Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253 at *4; *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Wright*, 2018 WL 3966253 at *4 (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006)). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id*.

In this case, the Parties engaged in extensive informal discovery. Class Plaintiff conducted extensive investigations into the facts before and during the prosecution of this case. These investigations included multiple meetings and conferences with the Class Plaintiff, consultation with the Collective and Class Members, analysis of payroll and other documents produced by Class Plaintiff and Defendant, individualized damages calculations, analysis of Defendant's legal positions, investigation into the viability of class and collective action treatment, and extensive analysis of potential class-wide damages. In short, this record demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made well-informed decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

### D. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ).

Here, Class Plaintiff alleges that she and similarly situated individuals defined above should have been paid overtime premium because (1) IHC did not pay them overtime premium for all hours worked over 40 in one or more workweeks; and (2) once IHC began paying overtime, it failed to pay overtime based on the correct regular rate of pay during workweeks when Class Plaintiff and the Rule 23 Class received additional forms of non-discretionary remuneration. ECF No. 21. Defendant IHC denies Class Plaintiff's claims and asserted affirmative defenses. *See* Answer to First Amended Complaint, ECF No. 24. Class Plaintiff's Counsel aver that litigating

FLSA claims involve risk and uncertainty because they require Class Plaintiff to establish both Defendant's liability and each Class Members' damages. Mot. for Prel. Approval, ECF No. 34, PAGEID # 187. In contrast, the settlement ensures that Class Plaintiff and the Rule 23 Class will receive 101% of their alleged damages (excluding liquidated damages).

Accordingly, due to the existence of uncertainties inherent in their claims, Plaintiff's likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement.

### E. The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Wright*, 2018 WL 3966253 at *5; *see, e.g., Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer*, 2012 WL 1945144, at *7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in class action litigation and corporate matters. *See* First Coffman Decl. ¶¶ 3-8 and 18-19, ECF No. 34-8; First Bryant Decl. ¶¶ 1-6 and 16-17, ECF No. 34-9; *See also* Second Coffman Decl. ¶¶ 3 and 26-27, ECF No. 39-2; Second Bryant Decl. ¶¶ 3 and 26-27, ECF No. 39-3. After significant informal discovery and protracted arm's-length negotiations, the Parties reached a settlement in principle. Equipped with extensive experience, Class Counsel have concluded that this settlement is not only fair and reasonable but also a good result and confers substantial benefits on the Settlement Class. Class

Plaintiff also approves of the settlement, as indicated by her executing the settlement agreement. The undersigned therefore finds that this factor favors approval of the proposed Settlement.

### F. The Reaction of Absent Class Members

The undersigned must also consider the reaction of the absent class members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, the undersigned finds that reasonable and adequate notice was disseminated to the settlement class based upon measures described in the preliminary approval motion. Individual notices were sent by first class mail to the 18 Collective Members and the 46 Class Members. Johnson Decl. ¶ 5-6, ECF No. 39-1. The Notice Packets were sent using the National Change of Address system, which updates the addresses for all persons who had moved in the previous four years and who had filed a change of address with the U.S. Postal Service. Despite such notice, there were no objections, no requests for exclusion, and only one Notice Packet remains undeliverable. *Id*. at ¶¶ 6-7. In addition, no Class Members appeared at the fairness hearing, which creates the inference that all or most of the Class Members had no concerns about the proposed settlement. This positive response from the Settlement Class weighs in favor of approving the settlement. *Wright*, 2018 WL 3966253, at *5; *see*, e.g., *In re Broadwing*, 252 F.R.D. at 376.

### G. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007) (citations omitted). In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources. The undersigned therefore finds that this factor favors approving the settlement.

In sum, after considering all of the relevant factors, the undersigned concludes that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## III. ATTORNEY'S FEES AND COSTS

### A. Attorney's Fees

Class Counsel seeks an award of 33.5% of the total settlement amount. Defendant has not opposed this request for fees nor have any Class Members. In addition to the Motion for Approval of Settlement, the undersigned has reviewed Plaintiffs' counsel's Motion for Award of Attorneys' Fees and considered the additional arguments made in support of counsel's request.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h). Class Plaintiff's successful pursuit of this action can also support an award of reasonable attorney's fees. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *Wright*, 2018 WL 3966253, at *6; *see In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id*. Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires

"only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g., Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied); *see also Kimber Baldwin Designs, LLC v. Silv Commc'n, Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *5, 2017 U.S. Dist. LEXIS 186830, at *14 (S.D. Ohio Nov. 13, 2017) (Black, J.) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." (internal citations and quotations omitted). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Under the circumstances of this specific case, particularly where neither Defendant nor Plaintiff has opposed the fee request and the Class has received a "substantial benefit," the undersigned concludes that all of these factors weigh in favor of approving an award of attorney's fees.

As to the first factor, the undersigned has already described at length above the benefit conferred to the Class Members through Settlement. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. Here, although not required, a cross-check using Class Counsel's Lodestar amount weighs in favor of granting the requested fee award of $100,000. As Class Counsel represent in their supplemental memorandum and accompanying declarations, and as the undersigned has confirmed via an *in camera* review of counsel's detailed billing records, their Lodestar "exceeds the requested percentage amount, which will not account for additional work" for a nonduplicative total Lodestar amount of $101,237.25. ECF No. 39, PAGEID # 334-36. Specifically, Attorney Coffman and his firm calculate their lodestar amount to be approximately $56,140. Second Coffman Decl. ¶¶ 32-36, ECF No. 39-2 (averring that Attorney Coffman worked 160.4 hours at an hourly rate of $350). Attorney Bryant represents that his Lodestar amount would be $45,097.25. Second Bryant Decl. ¶¶ 32-36, ECF No.39-3 (averring that he worked 163.99 non-duplicative hours at an hourly rate of $275). The undersigned has confirmed that counsel's detailed billing records are consistent with these affirmations. The undersigned finds that Class Counsel's hourly rates are reasonable under the circumstances of this particular case as the percentage fund amount requested is close to the Lodestar calculation, even without the application of a multiplier.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. *See* ECF No. 39, at PAGEID #333. This factor weighs in favor of approving the requested fee award. *Wright*, 2018 WL 3966253 at 7; *see, e.g., In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F.Supp.2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The undersigned next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior-particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award. While the issue is not new to Class Counsel, there were still nuanced issues regarding wage and hour determinations, including additional regular rate calculations.

Class Counsel have extensive experience in class action litigation similar to this action. *See* Second Coffman Decl., ECF No. 39-2, ¶¶ 40-43; Second Bryant Decl., ECF No. 39-3, ¶¶ 40-43. As discussed above, the summary of hours expended submitted by Class Counsel further underscore their competency and efficient handling of this matter, favoring approval. For all of these reasons, the undersigned concludes that these factors favor approval of the fee award of $100,000 to Class Counsel.

**B. Settlement Administration Costs and Out-of-Pocket Expenses**

Class Counsel avers that out-of-pocket expenses currently amount to $439.41, which would increase exponentially should the case proceed through trial. CAC has also incurred costs in the amount of $3,095.00. ECF No. 39-1, ¶ 14. The undersigned finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of

$439.41 for out-of-pocket expenses and $3,095.00 for administration costs. *Cf. Feiertag v. OOP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *8 (S.D. Ohio Sept. 9, 2016).

### C. Class Representation Award

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement Agreement proposes to award $5,000 to Class Plaintiff Mitchell for her efforts in bringing and pursuing this action, and in consideration of their general release. *See* Second Coffman Decl. ¶¶ 12-16, ECF No. 39-2; Second Bryant Decl. ¶¶ 12-16, ECF No. 39-3. As Class Counsel explain, her award is well-earned because she assisted Class Counsel with developments of the facts prior to and in filing the lawsuit, holding numerous conferences with Class Counsel as questions and/or issues arose, providing and reviewing relevant documents, which was all instrumental in achieving a settlement with Class Counsel. *Id.* In light of this service, the undersigned recommends that the Court approve the service award in the amount of $5,000, to Mitchell.

### IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** the Motion for final settlement approval and attorney's fees and Motion for Award of Attorneys' Fees be granted, ECF Nos. 35 and 39, and further **RECOMMENDS** the following be ordered:

1. The Court find that the proposed Settlement is "fair, reasonable, and adequate" to all participants and qualifies for approval pursuant to Rule 23(e).

2. The Court approve the Settlement and orders that it be implemented according to its terms and conditions and this Order.

3. The Court find that the Total Settlement Amount of $300,000, as well as the proposed allocations listed in the Settlement Agreement , are fair and reasonable. The Court order that such payments be distributed in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement.

4. The Court approve the proposed service award to Mitchell in the amount of $5,000 and orders that such payment be made in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement.

5. The Court find that awarding Class Counsel 33.5% of the settlement award in this case ensures "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *See Rawlings*, 9 F.3d at 316. The Court therefore approve the payment to Class Counsel of attorneys' fees in the amount of $100,000, expense reimbursements in the amount of $472.41, and costs of administration in the amount of $3,568.31, as provided in the Settlement Agreement. Such payments to be made in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement.

6. The Court **DISMISS** this case **WITH PREJUDICE** and **DIRECT** the Clerk to enter this Final Order and Judgment.

7. The Court retain jurisdiction over this action to enforce the terms of the Settlement Agreement and resolve any and all disputes thereunder.

## V. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE